UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

_____

UNICHEM ENTERPRISES, INC.,    :
    :
          Plaintiff,   :
    :
           v.   :
    :   Court No. 24-00033
UNITED STATES,   :
    :
          Defendant.   :

_____:

## **<u>ORDER</u>**

Upon reading defendant's motion to dismiss for lack of subject matter jurisdiction, plaintiff's response thereto; and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that defendant's motion be, and hereby is granted, and it is further

**ORDERED** that this action is dismissed.

_____
                     Judge

Dated: _____
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| UNICHEM ENTERPRISES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Court No. 24-00033 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade, defendant, the United States, respectfully requests that the Court dismiss this action for lack of subject matter jurisdiction upon the grounds set forth in the accompanying memorandum of law.

WHEREFORE, the United States respectfully asks this Court to enter an order granting its motion to dismiss and dismissing this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:                                    /s/ Hardeep K. Josan
MICHAEL A. ANDERSON                             HARDEEP K. JOSAN
Office of the Assistant                         Trial Attorney
Chief Counsel                                   International Trade Field Office
International Trade Litigation                   Department of Justice, Civil Division
U.S. Customs and Border                         Commercial Litigation Branch
Protection                                      26 Federal Plaza, Room 346
                                                New York, New York 10278
                                                (212) 264-9245

April 8, 2024                                   Attorneys for Defendant

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

_____

UNICHEM ENTERPRISES, INC.,    :
                              :
            Plaintiff,        :
                              :
        v.                    :
                              :    Court No. 24-00033
UNITED STATES,                :
                              :
            Defendant.        :
_____:

### MEMORANDUM IN SUPPORT OF
### DEFENDANT'S MOTION TO DISMISS

                        BRIAN M. BOYNTON
                        Principal Deputy
                        Assistant Attorney General

                        PATRICIA M. McCARTHY
                        Director

                        JUSTIN R. MILLER
                        Attorney-In-Charge
                        International Trade Field Office

Of Counsel:
MICHAEL A. ANDERSON         HARDEEP K. JOSAN
Office of the Assistant     Trial Attorney
Chief Counsel               International Trade Field Office
International Trade Litigation   Department of Justice, Civil Division
U.S. Customs and Border     Commercial Litigation Branch
Protection                  26 Federal Plaza, Room 346
                            New York, New York 10278
                            (212) 264-9245

April 8, 2024               Attorneys for Defendant

**TABLE OF CONTENTS**

BACKGROUND .......................................................................................................... 2

   I.   Legal Background ............................................................................................ 2

   II.   Factual And Procedural Background ............................................................. 3

ARGUMENT ............................................................................................................. 5

   I.   Standard Of Review ........................................................................................ 5

   II.   The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. 1581(a)
       Because The Subject Merchandise Has Not Been Excluded By Operation
       Of Law Under 19 U.S.C. 1499 (c) And Therefore There Is Not
       Protestable CBP Decision To Review ...................................................... 6

      A.  DEA Is Responsible For Administering The CSA And Enforcing The
          Controlled Substances Laws And Regulations of the United States ........................... 8

      B.  The Subject Merchandise Has Not Been Excluded By Operation Of Law Under
          19 U.S.C. § 1499 (c) Because The Admissibility Determination Is Vested
          With DEA And Not With CBP ............................................................... 10

CONCLUSION........................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Andritz Sundwig GMBH v. United States*,
322 F. Supp. 3d 1360 (Ct. Int'l Trade 2018).........................................................11, 12, 13

*CCB Group v. United States*,
783 F. Supp. 2d 1248, 1251 (Ct. Int'l Trade 2011)…………………………………..10, 11

*CR Indus. v. United States*,
10 CIT 561 (1986)........................................................................................................ 5

*Dart Exp. Corp. v. United States*,
43 C.C.P.A. 64 (1956)................................................................................................. 7

*Eastern Transp. Co. v. United States*,
272 U.S. 675, 47 S. Ct. 289, 71 L. Ed. 472 (1927)........................................................ 6

*Group v. United States*,
783 F. Supp. 2d 1248 (Ct. Int'l Trade 2011) .............................................................. 10

*Hartford Fire Ins. Co. v. United States*,
544 F.3d 1289 (Fed. Cir. 2008) .................................................................................. 6

*LDA* Incorporado *v. United States*,
978 F. Supp. 2d 1359 (Ct. Int'l Trade 2014) ............................................................... 7

*McMahon v. United States*,
342 U.S. 25, 72 S. Ct. 17, 96 L. Ed.  (1951) ............................................................... 6

*McNutt v. Gen. Motors Acceptance Corp.*,
298 U.S. 178 (1936)..................................................................................................... 5

*Mitsubishi Elecs. Am., Inc. v. United States*,
44 F.3d 973, 977 (Fed.Cir.1994) ............................................................................ 7, 13

*Ruckelshaus v. Sierra Club*,
463 U.S. 680 (1993)..................................................................................................... 6

*Steel Co. v. Citizens For A Better Env't*,
523 U.S. 83 (1998)........................................................................................................ 5

*Sunpreme, Inc. v. United States*,
946 F.3d 1300, 1320 (Fed. Cir. 2020)…………………………………………………....13

*U.S. Shoe Corp. v. United States*,
114 F.3d 1564 (Fed. Cir. 1997) .................................................................................... 7

*United States v. Mitchell*,
445 U.S. 535 (1980) ............................................................................................... 5, 6

*Wally Packaging, Inc. v. United States*,
578 F. Supp. 1408 (Ct. Int'l Trade 1984) .................................................................. 5

*Xerox Corp. v. United States*,
423 F.3d 1356 (Fed. Cir. 2005) ................................................................................. 7

**Rules**

Rule 12 (b)(1) ........................................................................................................ 1, 5

**Statutes**

7 U.S.C. § 7701 ......................................................................................................... 12

19 U.S.C. § 1499 ..................................................................................................... 2, 4

19 U.S.C. § 1499(c) .......................................................................................... *passim*

19 U.S.C. § 1499(c)(1) ................................................................................................ 2

19 U.S.C. § 1499(c)(5) .............................................................................................. 11

19 U.S.C. § 1499(c)(5)(A) ........................................................................................... 2

19 U.S.C. § 1499(c)(5)(B) ........................................................................................... 3

19 U.S.C. § 1514 ......................................................................................................... 6

19 U.S.C. § 1514(a) .................................................................................................... 7

19 U.S.C. § 1514(a)(4) ..................................................................................... 2, 6, 12

19 U.S.C. § 1595a(c) ................................................................................................. 15

21 U.S.C. § 801 ........................................................................................................... 8

21 U.S.C. § 802(41)(A) ............................................................................................... 9

21 U.S.C. § 802(41)(C)(i) ............................................................................................ 9

21 U.S.C. § 811(i) ....................................................................................................... 8

21 U.S.C. § 812 ........................................................................................................... 8

21 U.S.C. § 821 ........................................................................................................... 8

21 U.S.C. § 952 ............................................................................................................... 8

21 U.S.C. § 952(b) ..................................................................................................... 3, 9

21 U.S.C. §§ 952(b)(2) .................................................................................................. 9

21 U.S.C §§ 960(a)(1) .................................................................................................... 9

28 U.S.C. § 1581 ........................................................................................................... 6

28 U.S.C. § 1581(a) ............................................................................................. *passim*

The Customs Informed Compliance and Modernization Act,
Pub. L. No. 103-182, 107 Stat. 2057 ........................................................................ 13

## Regulations

C.F.R. §§ 1300-1316…………………………………………………………………8

21 C.F.R. § 1300.01(b) .................................................................................................. 9

21 C.F.R. § 1300.01(b)(2)(i) .......................................................................................... 9

21 C.F.R. § 1308.13(f) ................................................................................................... 9

21 C.F.R. §§ 1312.11 .................................................................................................. 3, 9

21 C.F.R. §§ 1312.11(a) ................................................................................................. 9

21 C.F.R. §§ 1312.18 .................................................................................................. 3, 9

## Other Authorities

The House Report,
H.R. Rep. No. 103-361 ........................................................................................ 13, 14

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |  |
|---|---|---|
| UNICHEM ENTERPRISES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Court No. 24-00033 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade, defendant, United States (the Government), respectfully requests that the Court dismiss this action for lack of subject matter jurisdiction. This action covers one entry, Entry No. BED-0054200-4, of merchandise that UniChem Enterprises, Inc. (plaintiff or UniChem) tried to import through Newark Liberty International Airport on November 8, 2023.[1] According to the commercial invoice, the merchandise consists of 500 kilograms of 7-keto dehydroepiandrosterone (7-Keto DHEA).

Plaintiff alleges that U.S. Customs and Border Protection (CBP) incorrectly excluded the merchandise. *See generally* Compl. Plaintiff further alleges that the Court has jurisdiction to consider this claim under 28 U.S.C. § 1581(a), which allows the Court to review decisions that are subject to the administrative protest mechanism. Compl. ¶ 1. As will be discussed below, however, the Court does not have section 1581(a) jurisdiction because no protestable decision has been made by CBP. CBP has neither

---

[1] CBP's Automated Commercial Environment (ACE) lists the date of import for the subject merchandise as November 6, 2023, and the date of entry as November 8, 2023.

made an admissibility decision with respect to the merchandise nor has the merchandise been excluded by operation of law under 19 U.S.C. § 1499(c).  Rather, CBP continues to detain the merchandise pending a decision by the United States Drug Enforcement Administration (DEA) on whether the merchandise is a Schedule III nonnarcotic controlled substance under the Controlled Substances Act (CSA).  Accordingly, the Court should dismiss this action for lack of subject matter jurisdiction.

## **BACKGROUND**

### I.    **Legal Background**

Under 19 U.S.C. § 1499, CBP has the authority to examine and detain imported merchandise.  Section 1499(c) sets forth certain actions that CBP must take and the time limits for those actions when detaining merchandise.  In particular, CBP is required to decide whether to release or detain merchandise within the 5-day period (excluding weekends and holidays) following the date on which the merchandise is presented to CBP for examination.  19 U.S.C. § 1499(c)(1).  If CBP does not release the merchandise within that 5-day period, the merchandise is considered detained.  *Id.*

Although the statute does not limit the amount of time that CBP may detain merchandise, if CBP does not make a final determination as to the admissibility of detained merchandise within 30 days after the merchandise has been presented for examination, CBP's inaction shall be treated as a decision by CBP to exclude the merchandise for purposes of 19 U.S.C. § 1514(a)(4), and a protest may be filed.  19 U.S.C. § 1499(c)(5)(A); 19 U.S.C. § 1514(a)(4).

If a protest is filed, CBP has 30 days to decide the protest, or the protest shall be treated as denied for purposes of the Court's jurisdiction, and the protestant may file an action with the Court. 19 U.S.C. § 1499(c)(5)(B); 28 U.S.C. § 1581(a).

Importantly for this case, however, 19 U.S.C. § 1499(c) makes clear that its provisions do not apply "in the case of merchandise with respect to which the determination of admissibility is vested in an agency other than the Customs Service." 19 U.S.C. § 1499(c). Thus, its provisions only apply where the admissibility determination is vested with CBP.

## II.    Factual And Procedural Background

The subject merchandise arrived at Newark Liberty International Airport on November 8, 2023 under cover of Entry No. BED-0054200-4. CBP detained the merchandise on November 8, 2023 because plaintiff had not submitted a DEA Form 236[2] and CBP was concerned that the shipment contained controlled substances.[3] CBP issued

---

[2] To import a Schedule III nonnarcotic controlled substance, the importer must be registered with the DEA and file a Controlled Substance Import/Export Declaration (DEA Form 236) with the DEA not later than 15 calendar days prior to the anticipated date of release by a customs officer. *See* 21 U.S.C. § 952(b); 21 C.F.R. §§ 1312.11 and 1312.18.

[3] Notably, other than the entry at issue in this action, there were three other entries involving different substances (namely, epiandrosterone, laxogenin, arimistane and 1-androsterone) imported by plaintiff that DEA investigated to determine whether the product was a controlled substance under the CSA. First, in May 2023, plaintiff attempted to enter a product through the San Francisco International Airport without proper authorization. After an investigation, DEA determined that plaintiff's May 2023 shipment was an anabolic steroid and a Schedule III controlled substance under the CSA, and that plaintiff's importation of the product violated DEA's regulations and was unlawful because plaintiff was not registered with DEA as an importer. Accordingly, on November 16, 2023, DEA formally requested that CBP seize the merchandise. Plaintiff's second and third shipments, on October 10, 2023 and November13, 2023, respectively,

3

its first detention notice for the subject merchandise on November 8, 2023, and it was presented to CBP for examination that same day.

On November 14, 2023, CBP sent a sample of the subject merchandise to CBP's Laboratory of Scientific Services (LSS) for analysis and identification. On or around November 14, 2023, DEA requested that CBP continue to detain the shipment and that CBP provide LSS's laboratory report to DEA. DEA requested the detention because it suspected that the subject merchandise is an anabolic steroid treated as a Schedule III controlled substance under the CSA and DEA's regulations. On December 7, 2023, CBP issued a second detention notice for the subject merchandise because LSS had not completed testing samples of the merchandise and DEA had not determined whether the merchandise was admissible.

On December 11, 2023, plaintiff filed a protest, Protest No. 4601-23-136557, challenging CBP's decision to "detain/exclude" the subject merchandise. Plaintiff alleged that CBP had "withheld the merchandise from delivery for more than 30 days without legal authority," and stated that the merchandise should be released to the importer "forthwith" pursuant to 19 U.S.C. § 1499.

On January 6, 2024, CBP issued a third detention notice for the subject merchandise because it was still waiting for LSS to complete its testing and DEA had not determined whether the merchandise was admissible. On January 9, 2024, CBP denied UniChem's protest on the basis that the challenged decision was "non-protestable." On January 10, 2024, LSS's laboratory report presumptively confirmed the identity of the

---

were released for entry after DEA's investigation because they did not contain controlled substances.

merchandise in the November 8, 2023 shipment as 7-Keto DHEA, as declared by

plaintiff.  CBP subsequently forwarded the laboratory report to DEA.

On February 5, 2024, CBP issued a fourth detention notice for the subject

merchandise because DEA was actively investigating the subject merchandise and it had

not yet determined if the subject merchandise was admissible.  On February 6 and 7,

2024, plaintiff filed its summons and complaint, respectively.

DEA's investigation of the subject merchandise is ongoing, and it has not yet

reached a decision as to the admissibility of the subject merchandise under the CSA.

## ARGUMENT

### I.        Standard of Review

The Court's determination of subject matter jurisdiction is a threshold inquiry.

*Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 94–95 (1998).  "It is fundamental

that the existence of a jurisdictional predicate is a threshold inquiry in which plaintiff

bears the burden of proof."   *CR Indus. v. United States*, 10 CIT 561, 562 (1986).  When

jurisdiction is challenged pursuant to Rule 12(b)(1), a plaintiff has the burden of

establishing the basis for jurisdiction.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S.

178, 189 (1936); *see also Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408, 1410

(Ct. Int'l Trade 1984) (noting that "[w]hen the Court's jurisdiction is challenged, the

party asserting jurisdiction has the burden of establishing that jurisdiction exists").

Furthermore, "[t]he United States, as sovereign, is immune from suit save as it

consents to be sued . . . , and the terms of its consent to be sued in any court define that

court's jurisdiction to entertain the suit."  *United States v. Mitchell*, 445 U.S. 535, 538

(1980) (internal quotations and citations omitted).  A waiver of sovereign immunity must

be unequivocally expressed, not merely implied. *Id.* As the United States Supreme

Court stated in *Ruckelshaus v. Sierra Club*:

> Waivers of immunity must be "construed strictly in favor
> of the sovereign," *McMahon v. United States*, 342 U.S. 25,
> 27, 72 S. Ct. 17, 19, 96 L. Ed. 268 (1951), and not
> "enlarge[d] . . . beyond what the language requires."
> *Eastern Transp. Co. v. United States*, 272 U.S. 675, 686, 47
> S. Ct. 289, 291, 71 L. Ed. 472 (1927).

463 U.S. 680, 685 (1993).

The precise expression of consent to suit are the jurisdictional statutes enacted by

Congress which authorize suit against the United States only under certain conditions.

In customs and trade litigation, subject matter jurisdiction in actions against the United

States is conferred upon this Court by 28 U.S.C. § 1581. Thus, although the United

States has consented to be sued in this Court, such suits may only be permitted if the

conditions of that statute are met.

## II. The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. § 1581(a) Because The Subject Merchandise Has Not Been Excluded By Operation Of Law Under 19 U.S.C. § 1499(c) And Therefore There Is No Protestable Decision By CBP To Review

Plaintiff asserts jurisdiction under 28 U.S.C. § 1581(a), *see* Compl. ¶¶ 1, 10,

which grants the Court exclusive jurisdiction "of any civil action commenced to contest

the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."

Congress created an express scheme, embodied by 28 U.S.C. § 1581(a) and 19 U.S.C. §

1514 for the importer to challenge certain decisions of CBP, including the exclusion of

merchandise. *See Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1291 (Fed. Cir.

2008) ("In subsection 1581(a), Congress set out an express scheme for administrative and

judicial review of Customs' actions.") (citations omitted); *see also* 19 U.S.C. §

1514(a)(4) (providing that "the exclusion of merchandise from entry" is a protestable CBP decision).  Pursuant to this scheme, the importer is required to protest the administrative decision and present its arguments to the agency in the first instance. Should the agency deny the protest in whole, or in part, the importer may commence a civil action under 28 U.S.C. § 1581(a) to have the trial court review the administrative decision.  28 U.S.C. § 1581(a).

There are limitations, however, to judicial review under this framework. "'Customs must engage in some sort of decision-making process in order for there to be a protestable decision.'"  *Xerox Corp. v. United States*, 423 F.3d 1356, 1363 (Fed. Cir. 2005) (*Xerox*) (quoting *U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997), and citing *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994), and *Dart Exp. Corp. v. United States*, 43 C.C.P.A. 64, 69–70 (1956)).  If CBP has no discretion in the decision, regardless of whether the decision is enumerated under 19 U.S.C. § 1514(a), then the decision is not one that is protestable in nature, and cannot be reviewed by the trial court under 28 U.S.C. § 1581(a).  *See*, *e.g.*, *LDA Incorporado v. United States*, 978 F. Supp. 2d 1359, 1367-68 (Ct. Int'l Trade 2014).

Plaintiff asserts jurisdiction under section 1581(a), and contests the alleged exclusion of the subject merchandise from entry by CBP.  Compl. ¶¶ 1, 6, 10, 19. Specifically, plaintiff alleges that the merchandise was deemed excluded by operation of law.  *Id.* at ¶ 13.  However, as discussed below, the Court does not have jurisdiction over this action because the subject merchandise has not been excluded by operation of law under 19 U.S.C. § 1499(c).  Rather, CBP continues to detain the merchandise pending an admissibility decision by DEA over which the Court lacks jurisdiction.

A.    DEA Is Responsible For Administering The CSA And Enforcing The Controlled Substances Laws And Regulations Of The United States

DEA regulates controlled substances through the CSA, 21 U.S.C. § 801 *et seq.*, as well as DEA regulations promulgated thereunder.  21 C.F.R. §§ 1300-1316.  As the agency responsible for enforcing the controlled substances laws and regulations of the United States, DEA's responsibilities include, in relevant part, regulating the importation of controlled substances (21 U.S.C. § 952); regulating the registration and controlling the manufacture, distribution, and dispensing of controlled substances (21 U.S.C. § 821); scheduling chemical compounds into the five schedules of controlled substances established by the CSA; and issuing scheduling orders adding recently emerged chemical compounds to the definition of anabolic steroids (21 U.S.C. § 811(i)).

Under the CSA, drugs, substances, and certain chemicals used to make drugs are classified into five distinct schedules (Schedules I through V), depending on their acceptable medical uses and their potential for abuse or dependence.  21 U.S.C. § 812. Relevant here, Schedule III drugs, substances, and chemicals are those with a moderate to low potential for psychological or physical dependence, and include testosterone and other anabolic steroids.

Anabolic steroids include both specifically listed chemical compounds and compounds that meet certain criteria related to the purpose for which the compounds are produced or sold.  Under the statutory and regulatory definitions of anabolic steroids, a substance can qualify as an anabolic steroid in one of three ways:

(1) it is a drug or hormonal substance (other than estrogens, progestins, corticosteroids, and dehydroepiandrosterone) that is chemically and pharmacologically related to testosterone (21 U.S.C. § 802(41)(A); 21 C.F.R. § 1300.01(b) (Anabolic steroid));

(2) it is one of a list of specifically identified chemical compounds (currently numbering 86) that have been designated in statute or regulation as anabolic steroids (21 U.S.C. § 802(41)(A); 21 C.F.R. § 1308.13(f)); or

(3) it is a drug or hormonal substance (other than estrogens, progestins, corticosteroids, and dehydroepiandrosterone) that is derived from or has a chemical structure substantially similar to a specifically identified anabolic steroid, and it either:

> (a) has been created or manufactured with the intent of producing a drug or substance that (i) promotes muscle growth or (ii) causes a pharmacological effect similar to testosterone; or

> (b) has been or is intended to be marketed or promoted in a manner suggesting that it will (i) promote muscle growth or (ii) have any other pharmacological effect similar to testosterone (21 U.S.C. § 802(41)(C)(i); 21 C.F.R. § 1300.01(b) (Anabolic steroid)(2)(i)).

Under the CSA, it is unlawful to import any nonnarcotic Schedule III controlled substance, including an anabolic steroid, unless it is imported pursuant to such import permit, notification, or declaration as the DEA may by regulation prescribe.  21 U.S.C. §§ 952(b)(2) & 960(a)(1).  Under DEA's regulations, anabolic steroids are subject to reporting on an import declaration, not an import permit.  21 C.F.R. §§ 1312.11(a) & 1312.18.  To import a Schedule III nonnarcotic controlled substance, DEA requires that the importer register with DEA and file a DEA Form 236 not later than 15 calendar days prior to the anticipated date of release by a customs officer.  *See* 21 U.S.C. § 952(b); 21 C.F.R. §§ 1312.11 and 1312.18.

**B.** **The Subject Merchandise Has Not Been Excluded By Operation Of Law Under 19 U.S.C. § 1499(c) Because The Admissibility Determination Is Vested With DEA And Not With CBP**

No agency has yet determined the admissibility of the subject merchandise. Accordingly, the Court can only have subject matter jurisdiction under 28 U.S.C. § 1581(a) if it has been deemed excluded by operation of law under 19 U.S.C. § 1499(c). *See* 19 U.S.C. § 1499(c). However, the provisions of 19 U.S.C. § 1499(c) do not apply "in the case of merchandise with respect to which the determination of admissibility is vested in an agency other than the Customs Service." *Id.* As we discuss below, the admissibility determination for the subject merchandise is vested with DEA and not with CBP. Therefore, the subject merchandise has not been deemed excluded and the Court does not have subject matter jurisdiction over this case.

The question of whether Congress vested an admissibility determination in an agency other than CBP (for purposes of 19 U.S.C. § 1499(c)) hinges on whether another agency has taken responsibility for determining the legality of the merchandise, even if that agency does not necessarily have separate authority to detain or exclude the merchandise. For instance, in *CCB Group v. United States*, 783 F. Supp. 2d 1248, 1251 (Ct. Int'l Trade 2011), a case concerning the deemed exclusion of alleged counterfeit goods that allegedly violated copyright law, the Court briefly discussed 19 U.S.C. § 1499(c) in its jurisdictional analysis, stating:

> Plaintiff's claim arises under section 515 and also under section 499(c) of the Tariff Act, which applies '[e]xcept in the case of merchandise with respect to which the determination of admissibility is vested in an agency other than the Customs Service . . . .' 19 U.S.C. § 1499(c). According to the submissions of both parties, the *determination of admissibility of plaintiff's merchandise turns on the question of whether copyright violations*

10

> *occurred upon importation*, a determination not vested in
> any agency other than Customs."

*CBB*, 783 F. Supp. 2d 1251 (emphasis added).

In *CCB*, the Court found that the provisions of 19 U.S.C. § 1499(c) applied because it was undisputed that, for the specific merchandise at issue, CBP was solely responsible for determining whether copyright violations had occurred. *Id.* However, the Court's focus on identifying which agency would make the central determination of legality shows that the provisions of 19 U.S.C. § 1499(c) do not apply when an agency other than CBP has taken responsibility for deciding whether the merchandise can be legally imported.

It makes sense that the provisions of 19 U.S.C. § 1499(c) would not apply when another agency is responsible for deciding the legality of an importation. One purpose of 19 U.S.C. § 1499(c) is to provide an avenue for importers to protest CBP's decision to exclude merchandise. *See* 19 U.S.C. § 1499(c)(5). But when CBP's decision is based on a determination by another agency, there is no protest remedy that CBP can provide because the importers' dispute is with the other agency's determination, not CBP's decision. If there is no protest remedy, it necessarily follows that that there is no remedy under 28 U.S.C. § 1581(a) because, again, the importer is contesting another agency's determination, not a decision by CBP.

The Court's decision in *Andritz Sundwig GMBH v. United States*, 322 F. Supp. 3d 1360, 1364 (Ct. Int'l Trade 2018) is instructive. Although the case did not involve a deemed exclusion or specifically discuss 19 U.S.C. § 1499(c), the Court recognized that a protest challenging actions taken by CBP on behalf of another agency and pursuant to that agency's regulations and laws was invalid and did not give rise to jurisdiction under

11

28 U.S.C. § 1581(a).  In *Andtritz*, CBP, which is jointly responsible for enforcing the Plant Protection Act with the U.S. Department of Agriculture (USDA), issued Emergency Action Notifications (EANs) to the importer under the Plant Protection Act commanding the importer to re-export or destroy pest infested cargo and packaging material.  The importer protested the EANs and then filed a case before the Court challenging CBP's denial of the protest.  The importer claimed that the Court had jurisdiction under, *inter alia*, 28 U.S.C. § 1581(a) and 19 U.S.C. § 1514(a)(4), which provides the court with jurisdiction over protests of CBP's decisions concerning "the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws . . . ."  *See* 19 U.S.C. § 1514(a)(4).

In rejecting the importer's jurisdictional claims, the Court acknowledged that the case potentially involved "the exclusion of merchandise from entry" under 19 U.S.C. § 1514(a)(4), but it determined that it was not a decision that CBP made "under any provision of the customs laws."  *Andtritz*, 322 F. Supp. 3d 1360 at 1364.  The Court concluded that the exclusion effected by the EANs was instead made pursuant to agricultural laws.  In support, the Court noted that the EANs listed USDA as the supervisory agency and cited to the Plant Protection Act and regulations promulgated thereunder, and that "the EANs represent one aspect of the [USDA's] efforts to enforce the Plant Protection Act and to safeguard 'the agriculture, environment, and economy of the United States.'"  *Id.* (quoting 7 U.S.C. § 7701).  Accordingly, the Court concluded that because the importer's protest of the EANs involved an exclusion pursuant to agricultural laws instead of customs laws, it did not have jurisdiction under 28 U.S.C. § 1581(a).

12

Importantly, in *Andritz*, the Court inherently recognized that when CBP's actions or decisions are taken or made on behalf of, or at the behest of, other agencies and reflect those agencies' efforts to enforce non-customs laws and regulations for which they have or share responsibility, the Court lacks jurisdiction to review the ministerial actions of CBP. *Andritz*, 322 F. Supp. 3d at 1364; *see also Sunpreme, Inc. v. United States*, 946 F.3d 1300, 1320 (Fed. Cir. 2020) ("The term 'ministerial' often is used to contrast the presence of certain kinds of discretion or judgment." (citations omitted.)); *see*, *e.g.*, *Mitsubishi Electronics. America, Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994) (Customs "ministerial role in liquidating antidumping duties under 19 U.S.C. § 1514(a)(5)" is not reviewable under the jurisdiction provision of 28 U.S.C. § 1581(a)). Such is the case here where CBP detained merchandise on behalf of DEA that then is independently applying the controlled substances laws and regulations to determine the legality of the merchandise.

The legislative history of Section 499 of the Tariff Act of 1930, as amended by the Customs Informed Compliance and Modernization Act, Pub. L. No. 103-182, 107 Stat. 2057 (Mod Act) also indicates that the provisions of 19 U.S.C. § 1499(c) were not intended to apply when another agency with authority over the subject matter has taken responsibility for determining whether a given importation is legal and thus admissible.

Section 499 of the Tariff Act of 1930 was amended to add the provisions found in 19 U.S.C. § 1499(c) by the Mod Act, which was included as Title VI of the North American Free Trade Agreement Implementation Act. The House Report accompanying the Mod Act explains that the purpose of the provision was to establish procedures that

13

would provide importers with notice and remedies for detentions of merchandise by CBP. H. R. Rep. No. 103–361 at 108–9, as reprinted in 1993 U.S.C.C.A.N. at 2662–63.

The House Report indicates, however, that the new procedure providing recourse through this Court "would be reserved for admissibility determinations for which the Customs Service is responsible," and not when Customs "detains merchandise on behalf of other Government agencies and is not directly involved in the activities which result in the decision to admit or exclude the merchandise." *See id.* at 2662. The House Report states:

> The Committee recognizes that *Customs often detains merchandise on behalf of other Government agencies and is not directly involved in the activities which result in the decision to admit or exclude the merchandise.* These agencies include the Food and Drug Administration (FDA) and the Department of Agriculture, among others. *This procedure providing recourse through the Court of International Trade would be reserved for admissibility determinations for which the Customs Service is responsible.* Nothing in this section is intended to change the procedures or relationship between Customs and other Federal agencies. However, this would not preclude application of this new procedure and remedy in those cases where Customs has the responsibility and authority to determine the admissibility of the merchandise, and such procedures and remedies are agreed to by the other agency.

*Id.* (emphasis added). The House Report thus further supports the conclusion that the provisions of 19 U.S.C. § 1499(c) were not meant to apply in instances in which CBP has detained merchandise on behalf of another agency but that other agency is responsible for making the admissibility determination and CBP is not directly involved in the other agency's actions resulting in the admissibility determination.

Here, the admissibility determination has vested with DEA because it has taken responsibility for determining whether the subject merchandise violates controlled

14

substances laws and thus whether it is admissible.  Although CBP is authorized to enforce controlled substances laws and to seize illegally imported controlled substances (*see* 19 U.S.C. § 1595a(c)), in this instance, CBP detained the subject merchandise at the request of DEA.  As explained above, DEA requested the detention because it suspected that the subject merchandise is an anabolic steroid treated as a Schedule III controlled substance under the CSA and DEA's regulations, and it needed time to investigate whether the subject merchandise was imported contrary to the CSA.  There is no question that DEA has the authority to determine whether the subject merchandise violates controlled substances laws, and is the agency charged with making such a determination.

Moreover, DEA is determining the legality of the subject merchandise independently of CBP, and CBP is not directly involved in DEA's activities.  If DEA ultimately determines that the subject merchandise violates controlled substances laws and is thus inadmissible, the subject merchandise will be excluded or seized based on DEA's admissibility determination.

In sum, because DEA requested the detention of the subject merchandise and is independently investigating its legality under the laws and regulations under its purview, and because DEA has taken responsibility for determining whether the subject merchandise is legal and thus admissible, the admissibility determination for the subject merchandise is vested with DEA and not CBP.  Accordingly, the provisions of 19 U.S.C. § 1499(c) do not apply, the merchandise has not been deemed excluded by operation of law, and the Court does not have subject matter jurisdiction over this case under 28 U.S.C. § 1581(a).

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Government's motion to dismiss.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy
Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
       JUSTIN R. MILLER
       Attorney-In-Charge
       International Trade Field Office

Of Counsel:                        /s/ Hardeep K. Josan
MICHAEL A. ANDERSON                HARDEEP K. JOSAN
Office of the Assistant            Trial Attorney
Chief Counsel                      International Trade Field Office
International Trade Litigation      Department of Justice, Civil Division
U.S. Customs and Border            Commercial Litigation Branch
Protection                         26 Federal Plaza, Room 346
                                   New York, New York 10278
                                   (212) 264-9245
April 8, 2024                      Attorneys for Defendant

16

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Hardeep K. Josan, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in support of defendant's motion to dismiss, dated April 8, 2024, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 4,280 words.

<u>/s/ Hardeep K. Josan</u>