Slip Op. 24-131

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **UNICHEM ENTERPRISES, INC.,** | |
| Plaintiff, | |
| v. | **Before: Timothy M. Reif, Judge** |
| **UNITED STATES,** | **Court No. 24-00033** |
| Defendant. | |

## <u>OPINION AND ORDER</u>

[Denying defendant's motion to dismiss for lack of subject matter jurisdiction.]

Dated:  November 26, 2024

<u>Christopher J. Duncan</u> and <u>Elon Abram Pollack</u>, Stein Shostak Shostak Pollack & O'Hara, LLP, of Los Angeles, CA, argued for plaintiff Unichem Enterprises, Inc.

<u>Hardeep K. Josan</u>, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for defendant United States.  With her on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Justin R. Miller</u>, Attorney-In-Charge, International Trade Field Office.  Of counsel on the brief was <u>Michael A. Anderson</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Reif, Judge: Before the court is the motion to dismiss of defendant United States ("defendant").  Def.'s Mot. to Dismiss ("Def. Br."), ECF No. 11.  Plaintiff Unichem Enterprises, Inc. ("plaintiff") alleges that one of its entries was "deemed excluded" by operation of law under section 499 of the Tariff Act of 1930, 19 U.S.C. § 1499(c)(5)(A), after U.S. Customs and Border Protection ("Customs") failed to make a determination

as to the entry's admissibility within the time period provided by that statute.[1]  Pl.'s

Compl. ("Compl.") ¶¶ 11-20, ECF No. 5.  Plaintiff requests that the court order Customs

to admit and release the entry.  *Id.* ¶ 20.  Defendant responds that the instant

admissibility determination is vested in the Drug Enforcement Agency ("DEA") — not

Customs.  Def. Br. at 10.  Defendant argues on this basis that Customs has not made a

"protestable decision" under 19 U.S.C. § 1514(a)(4), and that, as a consequence, this

court lacks subject matter jurisdiction under 28 U.S.C. § 1581(a).  *Id.* at 6-15.

For the reasons that follow, the court denies defendant's motion to dismiss.

## BACKGROUND

The instant action covers one entry, Entry No. BED-0054200-4, of 7-Keto

dehydroepiandrosterone ("7-Keto DHEA" or "subject merchandise").  Compl. ¶ 2.  On

November 6, 2023, plaintiff imported the subject merchandise.  Protest No. 4601-23-

136557 at 7 (Entry Summary), ECF No. 13-1; Compl. ¶¶ 2, 11; 19 C.F.R. § 141.68(b).

On November 8, 2023, the subject merchandise was presented for customs

examination.  Def. Br. at 3-4; Summons, ECF No. 1.  On that day, Customs detained the

---

[1] Subsequent citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2018 edition.

subject merchandise because plaintiff had not submitted to Customs a Controlled

Substance Import/Export Declaration (DEA Form 236).[2]  Compl. ¶ 13; Def. Br. at 3.

        When Customs detains imported merchandise, 19 U.S.C. § 1499(c)(2) requires

that Customs "issue a notice to the importer . . . no later than 5 days . . . after the

decision to detain the merchandise is made."  In all, Customs issued to plaintiff four

detention notices.  On November 8, 2023, the date on which Customs detained the

subject merchandise, Customs issued the first detention notice.  Compl. ¶ 13; Pl.'s Ex. A

("First Detention Notice"), ECF No. 12-1.  In that notice, Customs stated that the reason

for detention was "Further Investigation."[3]  First Detention Notice.

---

[2] Registered importers are permitted to import Schedule III non-narcotic controlled substances by filing a controlled substances import declaration, called a DEA Form 236. 21 U.S.C. § 952(b) prohibits the importation of "any non-narcotic controlled substance in Schedule III, IV, or V, unless" that non-narcotic controlled substance "(1) is imported for medical, scientific, or other legitimate uses, and (2) is imported pursuant to such notification, or declaration, or in the case of any nonnarcotic controlled substance in schedule III, such import permit, notification, or declaration, as the Attorney General may by regulation prescribe."  *See also* 21 C.F.R. § 1312.11(b) (requiring importers of non-narcotic Schedule III drugs to be "properly registered under the act"); *id.* § 1312.18(a) (stating that certain Schedule III listed non-narcotic controlled substances needed for "medical, scientific or other legitimate uses" may be imported "pursuant to a controlled substance import declaration"); *id.* § 1312.18(b) (allowing "any person registered" to import "any non-narcotic controlled substance listed in Schedule[] III . . . which is not subject to the requirement of an import permit . . . [by] fil[ing] a controlled substances import declaration (DEA Form 236) with the Administration through the DEA Diversion Control Division . . . not later than 15 calendar days prior to the anticipated date of release by a customs officer").

[3] According to defendant, three separate entries belonging to plaintiff were subject to separate DEA investigations when plaintiff imported those entries.  Def. Br. at 3-4 n.3. In May 2023, plaintiff imported a product that the DEA subsequently concluded was an anabolic steroid and Schedule III controlled substance.  *Id.*  Consequently, defendant asserts that on November 16, 2023, the DEA requested that Customs seize that merchandise.  *Id.*  Defendant states that the other two entries were released after the DEA concluded that the entries did not contain controlled substances.  *Id.*

Defendant states that on November 14, 2023, Customs sent a sample of the subject merchandise to Customs' Laboratory of Scientific Services ("LSS") for analysis and identification.  Def. Br. at 4.

Defendant maintains that on or around November 14, 2023, the DEA requested that Customs continue to detain the subject merchandise and that Customs provide the laboratory report to the DEA.  *Id.*  Defendant asserts further that the DEA requested the detention because it suspected that the subject merchandise is an anabolic steroid treated as a Schedule III controlled substance under the Controlled Substances Act and the DEA's regulations.  *Id.*

On December 7, 2023, Customs issued the second detention notice for the subject merchandise because, according to defendant, Customs had not completed testing samples of the merchandise and the DEA had not determined whether the merchandise was admissible.  *Id.*; *see* Pl.'s Ex. B ("Second Detention Notice"), ECF No. 12-2.  That detention notice stated that the "reason for the detention" was "[f]urther analysis needed."  Second Detention Notice.  In addition, the notice stated that the subject merchandise was detained "pursuant to" Customs' authority under 19 U.S.C. § 1499 and 19 C.F.R. § 151.16.  *Id.*

On December 11, 2023, plaintiff filed Protest No. 4601-23-136557, which challenged what plaintiff described as Customs' "deemed exclusion" of the subject merchandise.  Protest No. 4601-23-136557; Compl. ¶ 15.  According to plaintiff in that protest, the subject merchandise was deemed excluded on December 8, 2023, which was 30 days after the date on which the subject merchandise had been presented for customs examination.  Protest No. 4601-23-136557 at 4; *see* 19 U.S.C. § 1499(c)(5)(A).

On January 9, 2024, Customs rejected plaintiff's protest on the basis that the challenged decision was "non-protestable."[4]  Protest No. 4601-23-136557; *Id.* ¶ 16.

On January 6, 2024, Customs issued the third detention notice for the subject merchandise.  Def. Br. at 4.  According to defendant, Customs was "still waiting" for the lab to complete its testing and the DEA had not determined whether the merchandise was admissible.  *Id.*

On January 10, 2024, 30 days after plaintiff filed the instant protest, plaintiff's protest was deemed denied.  *See* 19 U.S.C. § 1499(c)(5)(B) (providing that "a protest against the decision to exclude . . . merchandise which has not been allowed or denied in whole or in part before the 30th day after the day on which the protest was filed shall be treated as having been denied on such 30th day").

Defendant asserts that on January 10, 2024, Customs' laboratory report presumptively confirmed the identity of the subject merchandise in the shipment of November 8, 2023, as 7-Keto DHEA, as declared by plaintiff.  *Id.* at 4-5.  Defendant

---

[4] Both plaintiff and defendant characterize Customs' actions on January 9, 2024, as a "denial" of plaintiff's protest of the deemed exclusion.  *See* Def. Br. at 4; Compl. ¶ 16. The basis for that "denial" was that the challenged decision was "non-protestable."  Def. Br. at 4.  The court notes that the protest form used in this case (CBP Form 19) indicates that where Customs determines that a challenged action is "non-protestable," the protest is not considered "denied" but is rather considered to have been "rejected." Protest No. 4601-23-136557 at 5 (CBP Form 19).  Indeed, where Customs *denies* a protest, this Court has "exclusive jurisdiction" over any civil action "to contest the denial."  28 U.S.C. § 1581(a); *see* 19 U.S.C. § 1515(a); *see also Padilla v. United States*, 33 CIT 1515, 1519, 659 F. Supp. 2d 1290, 1294 (2009) ("Marking rejected protests as denied only fosters confusion among the parties bringing or challenging such protests, government attorneys defending against such litigation, and the courts."). Because the basis for Customs' disposition of plaintiff's protest was that the protest was "non-protestable," the court considers Customs' actions on January 9, 2024, to be a rejection — as opposed to a denial — of that protest.

asserts also that Customs subsequently forwarded the laboratory report to the DEA.  *Id.*
at 5.

On February 5, 2024, Customs issued a fourth detention notice.  Pl.'s. Ex. C
("Fourth Detention Notice"), ECF No. 12-3.  In its briefing, defendant asserts that
Customs continued to detain plaintiff's merchandise "because the DEA was actively
investigating the subject merchandise and it had not yet determined if the subject
merchandise was admissible."  Def. Br. at 5; Fourth Detention Notice.  However, like the
second and third detention notices, Customs stated in the notice that the reason for the
detention was "[f]urther analysis needed" and that the detention was "pursuant to"
Customs authority under § 1499.  Fourth Detention Notice.  As with the three previous
notices, the fourth detention notice did not mention the DEA or explain that Customs
was detaining the merchandise on behalf of another federal agency.  *Id.*

On February 6, 2024, plaintiff commenced this action with the filing of its
summons.  Summons.  On February 7, 2024, plaintiff filed the instant complaint.  Compl.
On April 8, 2024, defendant filed its motion to dismiss, alleging that this court lacks
subject matter jurisdiction because "there [was] no protestable decision by CBP" for the
court to review.  Def. Br. at 6.

On June 25, 2024, defendant submitted to the court a status report "regarding
the [DEA's] investigation of merchandise covered by the entry in this case."[5]  June 25,
2024 Status Report at 1, ECF No. 21.  In that status report, defendant stated that on

---

[5] In the House Report accompanying the North American Free Trade Agreement
Implementation Act, of which the Customs Modernization Act was a part, the Committee
stated its intent that "[o]nce an action has commenced before the CIT, the Customs
Service shall immediately notify the Court if a decision to release, exclude or seize has
been reached."  H.R. Rep. No. 103-361, pt. 1, at 110 (1993).

June 18, 2024, the "DEA informed CBP that, 'at this time,' DEA 'believes UniChem's shipment of 7-keto dehydroepiandrosterone is a Schedule III anabolic steroid and its importation violates DEA regulations.'" *Id.*  Defendant reported that, accordingly, the DEA requested that Customs seize the subject merchandise.  *Id.*  Defendant specified in that status report that Customs "intend[ed] to seize the entry on DEA's behalf no sooner than thirty (30) days from" the June 25 status report.  *Id.*

On September 18, 2024, defendant filed with the court a second status report. Sept. 18, 2024 Status Report, ECF No. 25.  In that status report, defendant stated that "Customs seized the merchandise . . . on September 10, 2024, and issued [to plaintiff] the notice of seizure on September 17, 2024."  *Id.* at 1.

On September 19, 2024, the court held oral argument.  Oral Arg. Tr., ECF No. 30. At oral argument, the court requested that counsel for plaintiff file "post-hearing" a citation to a statute that vests the authority for determining the admissibility of merchandise in an agency other than Customs.  Oral Arg. Tr. 51:14-21.

On September 24, 2024, plaintiff filed a two-page document listing five authorities, three of which plaintiff asserted vested admissibility authority in an agency other than Customs, and two of which did not.  Pl.'s Supp. Filing on Federal Agencies' Authority to Detain and Admit Imported Merchandise, ECF No. 27.  In response to plaintiff's filing, on October 1, 2024, defendant submitted a motion to supplement its motion to dismiss to provide "additional documentation and briefing."  Def.'s Mot. to Supp. ("Def. Mot. Supp."), ECF No. 28.  On October 8, 2024, plaintiff filed a response in opposition to defendant's motion to supplement.  Pl.'s Resp. in Opp'n Def.'s Mot. to Supp. ("Pl. Resp. Def. Mot. Supp."), ECF No. 29.

**JURISDICTION AND STANDARD OF REVIEW**

Rule 12(b)(1) provides that "a party may assert . . . by motion" the defense of "lack of subject-matter jurisdiction."  USCIT R. 12(b)(1).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  USCIT R. 12(h)(3).

Whether a court has subject matter jurisdiction to hear an action is a "threshold" inquiry.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  "It is fundamental that the existence of a jurisdictional predicate is a threshold inquiry in which plaintiff bears the burden of proof."  *CR Indus. v. United States*, 10 CIT 561, 562 (1986).

**DISCUSSION**

**I.    Defendant's motion to supplement with additional documentation and briefing**

The court addresses first defendant's motion to supplement its motion to dismiss with additional documentation and briefing.  Defendant seeks to supplement its motion to dismiss with: (1) "email and letter communications between [Customs] and the [DEA]," which defendant asserts support its position that the DEA was responsible for the instant admissibility determination; (2) "a written response to plaintiff's supplemental submission" to explain "why the authority to detain and admit [merchandise] is not the controlling analysis"; and (3) "written analysis regarding the Court's jurisdiction now that the merchandise has been seized."  Def. Mot. Supp. at 1, 3.

Plaintiff opposes defendant's motion.  According to plaintiff, defendant's request is not permitted by the Rules of the U.S. Court of International Trade (the "Court").  Plaintiff argues also that defendant's motion is not — but is required to be — supported

by "newly discovered facts or arguments arising after [defendant's] prior filing."  Pl.
Resp. Def. Mot. Supp. at 3-4.  Plaintiff asserts that defendant "has had multiple
opportunities to argue its motion to dismiss," and for that reason additional briefing is
unwarranted.  *Id.* at 5.

The court denies for three reasons defendant's motion to supplement.  First, with
respect to any emails or letters between Customs and the DEA, the court does not
consider such internal communications relevant to the question before the court.  Such
communications between Customs and the DEA would be relevant in showing only that
Customs may have consulted the DEA in reaching an admissibility determination — not
whether such determination is vested in the DEA.  In addition, such communications
would do nothing to notify the importer that authority for determining admissibility of the
subject merchandise was vested in the DEA and that the protest remedy was therefore
unavailable.  On this point, the court notes once again that none of the notices that
Customs sent to plaintiff instructed it that an agency other than Customs was
responsible for determining the admissibility of plaintiff's merchandise.

Second, as to defendant's request to provide "a written response to plaintiff's
supplemental submission" and "written analysis" concerning the effect of Customs'
seizure, the Rules of the Court in general permit only a response to a dispositive motion
followed by a reply of the moving party.  *See* USCIT R. 7(d).  Moreover, specifically as
to defendant's request to file "a written response to plaintiff's supplemental submission,"
defendant seeks an opportunity to explain to the court that "authority to detain and admit
[merchandise] is not the controlling analysis."  Def. Mot. Supp. at 3.  However,
defendant has already made this argument, both in its opening brief and in its reply

brief.  *See* Def. Br. at 10 ("The question of whether Congress vested an admissibility

determination in an agency other than CBP . . . hinges on whether another agency has

taken responsibility for determining the legality of the merchandise, even if that agency

does not necessarily have separate authority to detain or exclude the merchandise.");

Def. Reply Br. at 4-5 (same).  Because this basis for defendant's request "does not raise

any issue that could not have been or was not already addressed" in defendant's

opening brief and reply brief, the court will not grant supplemental briefing to address

the issue further.  *LG Elecs., Inc. v. U.S. Int'l Trade Comm'n*, 37 CIT 1589, 1591-92

(2013) (citing *Crummley v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 62-64 (D.D.C. 2011)).

          Third, as to how Customs' seizure of the merchandise affects the question of this

court's jurisdiction, during oral argument, the court asked parties to address this issue

directly.[6]  Specifically, the court inquired as to parties' views of this Court's decision in

*CBB Grp., Inc. v. United States*, 35 CIT 743, 783 F. Supp. 2d 1248 (2011), in which the

Court held that Customs' seizure of merchandise did not divest the Court of jurisdiction

where that seizure occurred after jurisdiction over a deemed exclusion had attached.

Oral Arg. Tr. at 48:19-24.  When asked whether the court could exercise jurisdiction over

the deemed exclusion in light of Customs' seizure of September 10, 2024, counsel for

defendant responded: "Yes."  *Id.* at 50:22.

---

[6] This Court lacks jurisdiction to hear challenges to a Customs decision to seize
imported merchandise.  *See* 28 U.S.C. § 1356 (granting to the district courts original
jurisdiction "of any seizure under any law of the United States on land or upon waters
not within admiralty and maritime jurisdiction, except matters within the jurisdiction
of the Court of International Trade under section 1582 of this title"); 28 U.S.C. § 1582
(granting jurisdiction to this Court over "any civil action which arises out of an import
transaction and which is commenced by the United States").

In any event, the court does not consider additional briefing necessary in decide the question presented. As this Court has held, a Customs' seizure of merchandise "after the jurisdiction of the Court of International Trade has attached to a plaintiff's cause of action contesting a deemed exclusion cannot be binding on this Court, for otherwise the agency's determination would be permitted to usurp the Court's judicial power and prevent the Court from fulfilling its judicial responsibility." *CBB Grp.*, 35 CIT at 749, 783 F. Supp. 2d at 1254; *see also Root Scis., LLC v. United States*, 45 CIT __, __, 543 F. Supp. 3d 1358, 1367 (2021) ("[W]here a seizure occurs *prior to a deemed exclusion by operation of law*, a deemed exclusion will not occur." (emphasis supplied)); *Blink Design, Inc. v. United States*, 38 CIT 746, 759, 986 F. Supp. 2d 1348, 1360 (2014) (collecting cases) ("[T]his court repeatedly has found subject matter jurisdiction wanting in cases, such as this one, where Customs seized a plaintiff's entries *prior to the plaintiff's filing suit in this Court*." (emphasis supplied)). In the instant case, Customs seized the subject merchandise — and issued the notice of seizure — *after* the date that the entries were allegedly deemed excluded and also *after* the date that plaintiff filed suit in this Court. *See* Summons; Sept. 18, 2024 Status Report at 1. For that reason, Customs' seizure of plaintiff's merchandise does not strip the court of jurisdiction over the alleged deemed exclusion.

For the reasons outlined above, the court denies defendant's motion to supplement.

## II.  Whether the Court has jurisdiction under § 1581(a)

U.S. law vested the authority to determine the admissibility of the subject merchandise in Customs, not the DEA. Therefore, the court has subject matter

jurisdiction over the exclusion by operation of law of the merchandise, and defendant's motion to dismiss is denied.

## A.    Legal framework

28 U.S.C. § 1581(a) confers upon the Court exclusive jurisdiction "of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  *See Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1291 (Fed. Cir. 2008) ("In subsection 1581(a), Congress set out an express scheme for administrative and judicial review of Customs' actions.") (citations omitted). Under 19 U.S.C. § 1514(a)(4), "the exclusion of merchandise from entry" is "final and conclusive upon all persons . . . unless a protest is filed."

19 U.S.C. § 1499(c) governs the requirements for when Customs determines to detain merchandise presented for customs examination.[7]  Under § 1499(c)(1), Customs is required to "decide whether to release or detain the merchandise," within five days "following the date on which merchandise is presented for customs examination." Merchandise not released within the five-day period "shall be considered to be detained merchandise."  *Id.*  If Customs fails "to make a final determination with respect to the admissibility of detained merchandise within 30 days after the merchandise has been presented for customs examination," that failure "shall be treated as a decision of the Customs Service to exclude the merchandise for purposes of section 1514(a)(4) of [title 19]."  *Id.* § 1499(c)(5)(A).

---

[7] Customs' regulations require that the port director "examine such packages or quantities of merchandise as he deems necessary for the determination of duties and for compliance with the Customs laws and any other laws enforced by the Customs Service."  19 C.F.R. § 151.1.

However, the requirements of § 1499(c) — including the notice requirement

under subsection (c)(1) and exclusion by operation of law under subsection (c)(5)(A) —

do not apply with respect to merchandise for which "the determination of admissibility is

vested in an agency other than the Customs Service."  *Id.* § 1499(c).

19 U.S.C. § 1499(c)(4) authorizes Customs to seize "detained merchandise" if

"otherwise provided by law."  19 U.S.C. § 1595a(c) in turn gives Customs the authority

to seize "[m]erchandise introduced contrary to law."  As relevant here, § 1595a(c)(1)(B)

provides that merchandise "which is introduced or attempted to be introduced into the

United States . . . shall be seized and forfeited if it . . . is a controlled substance, as

defined in the Controlled Substances Act (21 U.S.C. 801 et seq.), and is not imported in

accordance with applicable law."

### B.    Analysis

The court considers whether plaintiff's merchandise was "deemed excluded" by

reason of Customs' failure to make a final determination as to the admissibility of the

merchandise within 30 days after plaintiff presented it to Customs for examination.

Defendant contends that § 1499(c) does not apply because the instant

admissibility determination is vested in the DEA, not Customs.  Def. Br. at 10.

According to defendant, the DEA "is actively determining whether the subject

merchandise violates the controlled substances laws and thus whether it is admissible

and, therefore, for purposes of jurisdiction, the provisions of 19 U.S.C. § 1499(c) do not

apply."[8]  Def. Reply Br. at 6.

According to plaintiff, the determination as to the admissibility of plaintiff's

merchandise is vested in Customs, not the DEA.

The court concludes that Customs determined to detain the subject merchandise

under § 1499(c), and that Customs continued that detention greater than 30 days after

the merchandise was presented to Customs for examination.  As a result, §

1499(c)(5)(A) requires that Customs' inaction "be treated as a decision of the Customs

Service to exclude the merchandise for purposes of section 1514(a)(4)."

"Customs must engage in some sort of decision-making process in order for

there to be a protestable decision."  *Xerox Corp. v. United States*, 423 F.3d 1356, 1363

(Fed. Cir. 2005) (quoting *U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed.

Cir. 1997)).  "[A] decision may not be protested when Customs is merely taking action to

effectuate a decision of another agency."  *Wirtgen Am., Inc. v. United States*, 44 CIT __,

__, 437 F. Supp. 3d 1302, 1306 (2020) (citing *Mitsubishi Elecs. Am., Inc. v. United

States*, 44 F.3d 973, 977 (Fed. Cir. 1994)); 19 U.S.C. § 1514(a) (stating that protests

may be filed to challenge "decisions of the Customs Service").

Once merchandise is presented for customs examination, § 1499(c)(5)(A) gives

Customs 30 days to make the "final determination with respect to the admissibility of

detained merchandise."  The purpose of § 1499(c)(5) is to provide the importer a

---

[8] At oral argument, counsel for defendant stated: "Both agencies have the legal
authority" to determine whether the merchandise is a controlled substance.  Oral Arg. Tr.
at 31:4-7.  Nevertheless, defendant continued to maintain that "here, it is the DEA[]
[b]ecause of the circumstances of the case."  *Id.* at 31:11-12.

remedy where Customs takes no action concerning merchandise that Customs has

detained. *Root Scis., LLC*, 45 CIT at __, 543 F. Supp. 3d at 1369. Failure by Customs

to make the final determination within the 30-day period "shall be treated as a decision

of the Customs Service to exclude the merchandise for purposes of section 1514(a)(4)."

19 U.S.C. § 1499(c)(5)(A). As defendant acknowledges, § 1499(c) by its terms applies

only in situations in which Customs has the authority to determine the admissibility of

merchandise. Def. Br. at 3 (quoting 19 U.S.C. § 1499(c)).

       In the instant case, Customs exercised its authority pursuant to § 1499(c) to

detain the subject merchandise pending Customs' "final determination with respect to"

its admissibility. On November 8, 2023, Customs detained the subject merchandise

because, according to defendant, "*CBP was concerned* that the shipment contained

controlled substances." Def. Br. at 3-4 (emphasis supplied). On that day, Customs

issued to plaintiff the first detention notice.[9]  *See* First Detention Notice. Over the

course of the next three months, Customs issued to plaintiff three additional detention

notices, none of which mentioned the DEA and each of which expressly and specifically

invoked Customs' authority under § 1499. *See* Second Detention Notice (dated

---

[9] The detention notice of November 8, 2023, included in Box 1 a space for Customs to
inform plaintiff whether its merchandise was held by Customs on behalf of another
agency. First Detention Notice. Specifically, Box 1 stated: "Held for other agency?" *Id.*
Underneath the question were two boxes — a box for "Yes" and a box for "No" — along
with a space for Customs to provide the name of the agency on whose behalf Customs
was holding the merchandise. *Id.* Customs left Box 1 blank. *Id.*

December 7, 2023); Fourth Detention Notice (dated February 5, 2024).[10]  As stated, Customs is required to provide such notices to the importer under § 1499(c)(2), "[e]xcept in the case of merchandise" for which "the determination of admissibility is vested in an agency other than the Customs Service."  Therefore, that Customs issued the detention notices refutes defendant's position and establishes that Customs was exercising its authority to determine the admissibility of the detained merchandise.

In addition, the notice of November 8, 2023, directed plaintiff to "[s]end all correspondence" to "ATCET" — Customs' Anti-Terrorism Contraband Enforcement Team.  First Detention Notice.  And, according to defendant, on November 14, 2023, Customs sent a sample of the subject merchandise to Customs' Laboratory of Scientific Services for analysis and identification of the product.  Def. Br. at 4.  So, Customs detained the subject merchandise, sent a sample of that merchandise to Customs' own lab and instructed plaintiff that correspondence pertaining to that merchandise should be sent to Customs.

Customs' failure to make the "final determination with respect to the admissibility" of plaintiff's detained merchandise within 30 days of November 8, 2023, resulted by operation of law in the "exclu[sion] [of] the merchandise for purposes of [19 U.S.C. § 1514(a)(4)]."  19 U.S.C. § 1499(c)(5)(A).  On December 11, 2023, plaintiff filed a timely protest of the deemed exclusion.  Protest No. 4601-23-136557; Compl. ¶ 15.  Then, on January 10, 2024, plaintiff's protest was deemed denied.  19 U.S.C. § 1499(c)(5)(B).

---

[10] On January 6, 2024, Customs issued to plaintiff a third detention notice, which defendant submitted to the record at oral argument.  Except for the date, the third detention notice was identical in all respects with the second and fourth detention notices.

Accordingly, because plaintiff timely protested Customs' deemed exclusion of the

subject merchandise, the court has subject matter jurisdiction over plaintiff's action "to

contest [that] denial" under 28 U.S.C. § 1581(a).  *See also* 19 U.S.C. § 1514(a)(4).

Defendant maintains that the subject merchandise was not deemed excluded

under § 1499(c) because the admissibility determination is vested in the DEA.[11]  Def.

Reply Br. at 4-5.  Defendant argues that the DEA is "the agency responsible for

enforcing the controlled substances laws and regulations," and that the DEA's

responsibilities in that capacity include "regulating the importation of controlled

substances."  Def. Br. at 8 (citing 21 U.S.C. § 952).  According to defendant, "[t]he

question of whether Congress vested an admissibility determination in an agency other

than CBP (for purposes of 19 U.S.C. § 1499(c)) hinges on whether another agency has

taken responsibility for determining the legality of the merchandise, even if that agency

does not necessarily have separate legal authority to detain or exclude the

merchandise."  Def. Reply Br. at 5 (citing *CBB Grp.*, 35 CIT at 746, 783 F. Supp. 2d at

---

[11] To support its position, defendant attached to its reply brief the declaration of Brian Six, Division Counsel for the San Francisco Field Division of the DEA.  Declaration of Mr. Brian J. Six, ECF No. 14-1.  In that declaration, Mr. Six recounts his correspondence with plaintiff's counsel, in which they discussed whether three of plaintiff's entries, including the instant entry, contained controlled substances.  *Id.* ¶¶ 4-14.  The declaration does not support defendant's position that the authority to determine the admissibility of the subject merchandise is vested in the DEA.  To the contrary, Mr. Six states that he advised plaintiff's counsel that "[he] was aware of the additional detentions in Newark but was not familiar with specifics of DEA's investigation of Unichem's" merchandise in that entry.  *Id.* ¶ 6.  The declaration does not negate that Customs had the authority to determine the admissibility of the subject merchandise.

1251); *see also* Def. Br. at 11-13 (citing *Andritz Sundwig GMBH v. United States*, 42 CIT

__, __, 322 F. Supp. 3d 1360, 1364 (2018)).[12]

Defendant's proffered approach is untenable. Specifically, as this case

illustrates, defendant's approach leaves importers with no way of knowing whether the

authority for determining the admissibility of their merchandise is vested in Customs —

in which case the protest remedy is available — or in another agency — in which case

the protest remedy is not available. Def. Reply Br. at 5. Instead, the authority for

determining the admissibility of merchandise is "vested in an agency other than the

Customs Service" under § 1499(c) when the law by statute or regulation so provides.

The House Report accompanying the Customs Modernization Act described the

circumstances in which the admissibility determination is "vested in an agency other

than the Customs Service," § 1499(c):

> The Committee recognizes that Customs often detains merchandise on
> behalf of other Government agencies and is not directly involved in the
> activities which result in the decision to admit or exclude merchandise.
> These agencies include the Food and Drug Administration (FDA) and the
> Department of Agriculture [(USDA)], among others. This procedure

---

[12] Neither case on which defendant relies supports its approach. In fact, the cases
prove the opposite. In *CBB Grp., Inc. v. United States*, 35 CIT 743, 746, 783 F. Supp.
2d 1248, 1251 (2011), the Court observed only that the admissibility determination in
that case "turn[ed] on the question of whether copyright violations occurred upon
importation" — a determination "not vested in any agency other than Customs." There,
§ 1595a(c)(2)(C) authorized Customs to seize merchandise imported in violation of the
copyright laws, just as § 1595a(c)(1)(B) authorizes Customs to seize merchandise
imported in violation of the controlled substances laws. *Id.* Then, in *Andritz Sundwig
GMBH v. United States*, 42 CIT __, __, 322 F. Supp. 3d 1360, 1364 (2018), the Court
concluded only that it lacked jurisdiction over decisions of the USDA to exclude
merchandise from entry. In that case, the exclusions were pursuant to "Emergency
Action Notifications," which "list[ed] USDA as the supervisory agency and cit[ed] to the
Plant Protection Act and regulations promulgated thereunder." *Id.* (citing 7 U.S.C. §
7701). By contrast, and as noted above, in the instant case Customs (not DEA) issued
to plaintiff detention notices that were "pursuant to" *Customs'* authority under § 1499
(not any statutory authority of the DEA) and did not reference any other agency.

providing recourse through the Court of International Trade would be reserved for admissibility determinations for which the Customs Service is responsible.  Nothing in this section is intended to change the procedures or relationship between Customs and other Federal agencies.  However, this would not preclude application of this new procedure and remedy in those cases where Customs has the responsibility and the authority to determine the admissibility of the merchandise, and such procedures and remedies are agreed to by the other agency.

H.R. Rep. No. 103-361, pt. 1, at 112 (1993).

The House Report demonstrates that Congress did not intend for the requirements of § 1499(c) to apply to instances in which Customs detains merchandise "on behalf of another agency" such that Customs "is not directly involved in the activities which result in the decision to admit or exclude merchandise."[13]  *Id.*  That report referenced the FDA and the USDA as illustrative examples of agencies on whose behalf Customs "often detains merchandise."  *Id.*  Titles 21 and 7 in turn include express statutory authority for those agencies to "refuse[] admission" to, 21 U.S.C. § 381(a), or "hold, seize . . . or otherwise dispose" of, 7 U.S.C. § 7714(a), certain merchandise regulated by those agencies.  *See* 21 U.S.C. § 381(a) (requiring the Secretary of the Treasury to "deliver to the Secretary of Health and Human Services [(HHS)], upon his request, samples of food, drugs, devices, tobacco products, and cosmetics which are being imported . . . into the United States" and allowing the Secretary of HHS to "refuse[] admission" of those products under certain conditions); 7 U.S.C. § 7714(a) (authorizing the Secretary of USDA to "hold, seize, quarantine, treat, apply other

---

[13] On this point, and as outlined above, Customs issued to plaintiff detention notices "pursuant to" § 1499, sent samples of the subject merchandise to Customs' lab and instructed plaintiff to send correspondence to Customs.  Any contention that Customs either detained plaintiff's merchandise "on behalf of another agency" or "[was] not directly involved in the activities which result[ed] in the decision to admit or exclude" plaintiff's merchandise is without merit.

remedial measures to, destroy, or otherwise dispose of any plant, plant pest, noxious weed, biological control organism, plant product, article, or means of conveyance that . . . is moving into or through the United States" if "the Secretary has reason to believe [the merchandise] is a plant pest or noxious weed or is infested with a plant pest or noxious weed"); *see also Andritz*, 42 CIT at __, 322 F. Supp. 3d at 1364 (holding that this Court lacked jurisdiction over an action by the USDA to exclude merchandise from entry). Congress has authorized other agencies to regulate certain imported products, and those agencies have promulgated regulations delegating to themselves express authority to determine the admissibility of those products. *See, e.g.*, 16 U.S.C. §§ 1538(d)(3), 1540(e)(3) (Secretary of the Interior); *see also* 50 C.F.R. § 14.52 ("[A] Service officer [of the U.S. Fish and Wildlife Service] must clear all wildlife imported into the United States prior to release from detention by Customs officers.").[14]

---

[14] As another example, the Animal Health Protection Act, 7 U.S.C. § 8301, et seq., gives to the Secretary of Agriculture authority to issue regulations restricting the importation of meat and meat-food products. Under that authority, Department of Agriculture regulations provide that *Customs* may detain certain imports regulated under that statute, but *officers of the USDA* will determine whether the detained imports may enter the United States:

> (a) All imported meat and meat-food products offered for entry into the United States are subject to the regulations prescribed by the Secretary of Agriculture under the Animal Health Protection Act. . . . Such meat and meat-food products will not be released from CBP custody prior to inspection by an inspector of the Food Safety and Inspection Service, Meat and Poultry Inspection, except when authority is given by such inspector for inspection at the importer's premises or other place not under CBP supervision.

19 C.F.R. § 12.8(a).

The statutory and regulatory scheme in the instant case stands in stark contrast.

Defendant points to 21 U.S.C. § 952(a), which grants to the Attorney General authority

to prescribe regulations governing the importation of controlled substances.  Def. Br. at

8.  Under that authority, the Attorney General has issued regulations that, inter alia,

prohibit persons from importing controlled substances unless those persons either have

a permit and are "properly registered," 21 C.F.R. § 1312.11(a), or have "filed an import

declaration," *id.* § 1312.11(b).[15]  However, those provisions do not provide authority to

the DEA to determine the admissibility of any particular entry.  *See Inspired Ventures,*

*LLC v. United States*, Slip Op. 24-121, 2024 WL 4616192, at *5 (CIT Oct. 30, 2024)

("The mere promulgation of product standards and regulations does not vest that

agency with the authority to deny [admissibility to] imports that fail to meet those

---

[15] Similar to the DEA, the U.S. Fish and Wildlife Service has established by regulation
an "import declaration requirement."  50 C.F.R. § 14.61.  However, in contrast to the
DEA, the U.S. Fish and Wildlife Service has established by regulation also the authority
to determine whether imported wildlife actually complies with that requirement.  50
C.F.R. § 14.53 governs the "[d]etention and refusal of clearance" of imported wildlife:

   (a) Detention.  Any Service officer, or Customs officer [where the Service
   officer is unavailable], may detain imported . . . wildlife. . . .  As soon as
   practicable following the importation . . . and decision to detain, the Service
   will mail a notice of detention . . . to the importer. . . .

   (b) Refusal of clearance.  Any Service officer may refuse clearance of
   imported . . . wildlife . . . when there are responsible grounds to believe that:

      (1) A Federal law or regulation has been violated;
      (2) . . .
      (3) Any permit, license, or other documentation required for
      such wildlife is not available, is not currently valid, has been
      suspended or revoked, or is not authentic;
      (4) The importer . . . has filed an incorrect or incomplete
      declaration for importation as provided in § 14.61 or § 14.63 .
      . . .

standards.").  Defendant has not identified any statute or regulation that grants to the

DEA authority to determine whether imported merchandise suspected to contain

controlled substances is admissible into the United States.  To the contrary, 19 U.S.C. §

1595a(c)(1)(B) grants to Customs — not the DEA — the authority to seize merchandise

imported in violation of the controlled substances laws.  In short, Congress did not grant

to the DEA — nor has the DEA by regulation claimed — the authority to determine the

admissibility of imported merchandise.  For that reason, and for the reasons outlined

above, the authority to determine the admissibility of the subject merchandise was not

"vested in an agency other than the Customs Service."  19 U.S.C. § 1499(c).[16]

        In sum, Customs' failure to make a final determination as to the admissibility of

the subject merchandise within the required 30 days resulted in the exclusion of the

merchandise by operation of law.  *See* 19 U.S.C. § 1499(c)(5)(A).  As a consequence,

the court has subject matter jurisdiction over the deemed denial of plaintiff's protest.

---

[16] "[O]nce an action respecting a detention is commenced," the statute requires that the court "grant the appropriate relief," which may include "an order to cancel the detention and release the merchandise," unless "the Customs Service establishes by a preponderance of the evidence that an admissibility decision has not been reached for good cause."  19 U.S.C. § 1499(c)(5)(C).  The House Report supporting the Customs Modernization Act that established § 1499(c)'s procedures elaborated on the "good cause" standard:

> In meeting the "good cause" burden related to an admissibility decision before the Court of International Trade, the Committee intends that the Customs Service may satisfy the "good cause" burden by showing that another federal agency with jurisdiction over an admissibility decision has not yet reached a determination regarding the admissibility of the merchandise.  The Committee intends, however, that this not provide the basis for continued inordinate delay and would encourage the determination by the court of a reasonable date certain for a decision.

H.R. Rep. No. 103-361, pt. 1, at 112 (1993).  The court considers this language relevant to the question of whether the court may exercise jurisdiction in the instant case.  Congress plainly envisioned a scenario, such as the one before the court, in which Customs may decide on its own to detain merchandise for which Customs is authorized under the customs laws to determine admissibility, but where "jurisdiction over" that admissibility determination resides in another agency.  The court therefore has subject matter jurisdiction to review the deemed denial of plaintiff's protest of the deemed exclusion.  The nature of the DEA's communications to Customs — a matter of dispute in parties' briefing on defendant's motion to dismiss — will likely be a relevant consideration in the court's decision as to "the appropriate relief."  19 U.S.C. § 1499(c)(5)(C); *see also* 28 U.S.C. § 2640(a)(1) (providing that in "[c]ivil actions contesting the denial of a protest" under 19 U.S.C. § 1515, the court "shall make its determination upon the basis of the record made before the court").

**CONCLUSION**

For the reasons set out above, it is hereby

      **ORDERED** that defendant's motion to supplement its motion to dismiss is

**DENIED**; and it is further

      **ORDERED** that defendant's motion to dismiss for lack of subject matter

jurisdiction is **DENIED.**

                                       /s/      Timothy M. Reif

                                       Timothy M. Reif, Judge

Dated:    November 26, 2024
            New York, New York